ALEXANDER PLATT

*v.*

THE ÆTNA INSURANCE COMPANY.

*Filed at Springfield October 30, 1894.*

|153  113|
|159  415|
153  113|
171  1⁶7|
153     113
|101a  ²207
.153     115⟩
.111a  ⁴616

1. INSURANCE—*when arbitration does not waive right to rebuild.* A submission to arbitrators to fix a fire loss, under a clause of the policy, which submission provides that the arbitration shall be of binding effect "only so far as regards actual cash value or damage to such property," does not waive the company's reserved right to rebuild.

2. SAME—*what will amount to an election to pay loss, and not rebuild.* If the adjuster of a company, having, under the policy, a right of election to rebuild or pay loss, with thirty days in which to decide, unconditionally refuses, within the thirty days, to rebuild, and tells the insured the company will pay an award when made, this will be an election, and a waiver of the right to rebuild.

3. SAME—*an election to pay, once made, is final.* Such an election, made and expressed unconditionally to the insured by the adjuster, is final, and binding upon the company without a new consideration, and notwithstanding afterwards, and within the thirty days allowed for election, it gave the insured notice it would rebuild.

4. SAME—*parol waiver may be shown notwithstanding the arbitration.* A waiver of the right to rebuild, made by parol, may be shown, notwithstanding a subsequent written submission to arbitrators, its admission not being a violation of the rule that parol evidence will not be received to vary the terms of a writing.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Plaintiff in error declared on a policy of insurance issued to him by the defendant company, setting out the policy at length, and a written submission to and award by arbitrators, mutually chosen, as to the amount of loss. The policy covered plaintiff's residence to the amount of $3200 and furniture $800.

The policy contained among others, the following provisions: "Payments of losses shall be made in sixty days

after the loss shall have been ascertained and proved, and in case differences shall arise touching the amount of any loss or damage, it shall be submitted to the judg-, ment of arbitrators, mutually chosen, whose award, in writing, shall be binding upon the parties. In case of any loss on or damage to the property insured, it shall be optional with the company to replace the articles lost or damaged with others of the same kind and equal goodness, and to rebuild or repair the building or buildings (reasonable deduction being allowed for the increased value of new in replacing old material) within a reasonable time, giving notice of their intention so to do within thirty days after the preliminary proofs shall have been received at the office of the company."

It is averred that on March 27, 1889, the house was burned, and damaged to the full amount of the insurance; that the parties were unable to agree upon the amount of loss or damage, and submitted the question to two arbitrators, setting forth the submission, which provides that their appraisement and estimates, in writing, "as to the amount of such loss or damage, shall be binding on both parties," and concludes as follows: "It being understood that this appointment is without reference to any other question or matters of difference within the terms and conditions of the insurance, and is of binding effect only so far as regards the actual cash value of or damage to such property covered by policy No. 3491 of said company, issued at the Jacksonville, Ill., agency;" and that said arbitrators proceeded in their duty and rendered their award in writing, and awarded to plaintiff, as the amount of his loss and damages sustained, the sum of $3855.60, by means whereof defendant became liable, etc.

To this declaration a single plea was filed, averring that "after the submission and award, in plaintiff's declaration mentioned, were made, and within thirty days after the preliminary proofs of any loss by fire, on the part of the plaintiff, were received by defendant at its

office, the defendant, by its agent, gave notice to the plaintiff of its intention to rebuild and repair the building of the plaintiff burned and damaged by fire, in the said declaration described, and within a reasonable time after giving such notice as aforesaid, to-wit, within eight days thereafter, the defendant, through and by a builder employed by the defendant, undertook and began to rebuild and repair the said building, but the plaintiff refused to permit the said builder to rebuild or repair said building ; and this the defendant is ready to verify."

A general demurrer to this plea was sustained, and the defendant having elected to stand by it, a judgment by *nil dicit* was rendered in favor of plaintiff. Defendant appealed from this judgment to the Appellate Court for the Third District, where the judgment was reversed and the cause remanded to the circuit court, the Appellate Court holding the plea good. (*Platt* v. *Ætna Ins. Co.* 40 Ill. App. 191.) When the cause came again into the circuit court, the plaintiff, by leave of court, filed six replications to defendant's plea, to which replications defendant demurred. The court sustained the demurrer, and, plaintiff standing by his replications, rendered judgment in bar of plaintiff's action. Plaintiff then took his appeal to the Appellate Court, where the judgment was affirmed, and plaintiff now prosecutes this writ of error to reverse that judgment. The substance of these replications is stated in the opinion of the court.

Messrs. MORRISON & WHITLOCK, for the plaintiff in error:

Where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts. Any decisive act of the party, done with knowledge of his rights and of the facts, determines his election, and works an estoppel. Bigelow on Estoppel, 562 ; *Rodermund* v. *Clark*, 46 N. Y. 354; *Morris* v. *Rexford*, 18 id. 552; *Derrickson* v. *Krause*, 4 Bradw. 508.

Mr. EDWARD P. KIRBY, for the defendant in error :

A waiver is the intentional relinquishment of a known right. Knowledge of its existence, and intention to relinquish it, are both essential. *Perin* v. *Parker*, 126 Ill. 201.

The doctrine of waiver is only another name for the doctrine of estoppel. *Appleton* v. *Insurance Co.* 59 N. H. 541.

The fact that the company demanded an arbitration, as it had a right to do under the terms of its policy, was no waiver of its right to rebuild. *Insurance Co.* v. *Platt,* 40 Ill. App. 191.

There could be no waiver or estoppel against the party who simply demands what is his legal right under his contract. *Carlock* v. *Insurance Co.* 138 Ill. 210.

Mr. JUSTICE CARTER delivered the opinion of the court:

The errors assigned on this record bring in question, first, the sufficiency of the plea to sustain the judgment of the circuit court rendered in bar of plaintiff's action ; and second, the ruling of that court in sustaining defendant's demurrer to plaintiff's replications to said plea.

The substance of the plea is, that after the submission and award mentioned in the declaration, and within the thirty days provided in the policy, the defendant gave written notice to the plaintiff of its intention to rebuild, and undertook to rebuild, and was prevented by the plaintiff. The provisions in the policy affecting the question are : "Payment of losses shall be made in sixty days after the loss shall have been ascertained and proved, and in case differences shall arise touching the amount of any loss or damage, it shall be submitted to the judgment of arbitrators, mutually chosen, whose award, in writing, shall be binding on the parties. In case of loss on or damage to the property insured, it shall be optional with the company to replace lost or damaged goods with others of the same kind and equal goodness, and to rebuild or repair the building or buildings (a reasonable deduction being allowed for the increased value

of new in replacing old materials) within a reasonable time, giving notice of their intention so to do within thirty days after preliminary proofs shall have been received at the office of the company." The written submission to arbitration, which is also set out in the declaration, after providing that the appraisement of the arbitrators "as to the amount of loss or damage shall be binding on both parties," concludes: "It being understood that this appraisement is without reference to any other question or matters of difference within the terms and conditions of the insurance, and is of binding effect only so far as regards the actual cash value of or damage to such property," etc.

Plaintiff insists that the plea is insufficient, for the reason that the submission to and award by the arbitrators amounted to an election by defendant to pay, and a consequent waiver of its right to rebuild; that the arbitration, under the policy, had much to do with the question of payment,—in fixing the amount,—but nothing with the question of rebuilding. But it is a sufficient answer to say, that the parties themselves have, by their written submission, excluded from its effect every question which might arise under the policy except the actual amount of the loss. In other words, they have expressly provided that the submission to arbitration should not affect the rights of either party except as to the actual amount of the loss. How, then, can plaintiff claim that the defendant, by the written submission, waived its right to rebuild, when, by the very terms of the agreement, such waiver is provided against? So, in considering the question whether the plea states any defense, it is not necessary to construe this provision of the policy, since the parties have themselves construed it. Even if the proper construction of the policy were as contended by plaintiff, the court could not say that by the arbitration defendant had waived its right to rebuild, when the parties have effectually provided that it should not have

that effect. It necessarily follows that the plea presented a sufficient defense.

But a different question is presented by the replications. By them the plaintiff undertook to avoid the defense set up in the plea, by replying, in substance, in different forms, that the defendant had, before the submission to arbitration, elected to pay, and had waived its right to rebuild. To the first, second, third and fourth replications we regard the demurrer as well taken, and as the fifth and sixth contain all the material averments of the first four, we need to consider only the questions arising on the demurrer to replications five and six.

That these replications contain immaterial averments, in setting up the payment of expenses of arbitration, and the furnishing by plaintiff of plans and specifications, as insisted by counsel for defendant, is certainly true, for it could be no reply to the plea to say that plaintiff did any of those things which, under the terms of the policy, it was his duty to do. But regarding these averments as mere surplusage, the question arises whether or not there is not sufficient matter alleged in these replications, taken as true under the demurrer; to make a complete reply to the defense set up in the plea. They allege, in substance, that before the arbitration defendant waived its right to rebuild, in this, to-wit, that plaintiff requested defendant to rebuild the house, and defendant unconditionally and absolutely refused to rebuild, demanded the arbitration, and stated to plaintiff that it would pay the amount of the award when made. It may be said that these replications contain, at most, mere argumentative averments of an election by defendant to pay the loss in money when ascertained, and a consequent waiver of its right to rebuild; but as the demurrer was general, only, it is sufficient if the replications are good in substance. By the terms of the policy defendant had, for the thirty days mentioned in the policy, the right of choice between two alternatives. If it elected

to rebuild, it must give notice to that effect at any time within the thirty days; if it did not so elect, it was its duty, under the policy, to pay the loss within sixty days after its ascertainment. This right of choice was reserved for the benefit of the company itself, and implied, of course, the right to choose either course, at its own election, within the prescribed time, as might appear to be most to its advantage. While, as we have seen, the submission to arbitration did not, of itself, amount to an election, no reason is perceived why the company could not make its election aside from and independently of the arbitration. Nor was it necessary to wait until the expiration of the thirty days, nor until the amount of loss was ascertained by arbitration. It was entirely optional with the company. No new contract was required, and consequently no new consideration necessary to make its choice valid. It would be presumed that in making its choice it would take the course of greatest advantage to itself. Bishop on Contracts, secs. 96, 806.

The contention by counsel for defendant, that its refusal to plaintiff to rebuild, and its promise to pay, as set up in the replications, would not be binding on the company, and that such a promise was a mere *nudum pactum*, is not tenable. In order that the defendant might make a valid election under this policy, it was not necessary for plaintiff to do anything, to give anything, or to suffer anything. It is true, that if defendant, by words or acts, had led plaintiff reasonably to understand that it had elected to pay, and plaintiff had acted on such understanding, and thereby placed himself in a position where he would be prejudiced by the company's then electing to rebuild, the company would, on the doctrine of estoppel, be held to have waived its right, and to be precluded, from its election, to rebuild. (*Williamsburg Fire Ins. Co.* v. *Cary*, 83 Ill. 453.) But we do not understand that such is the only method by which a waiver may be shown, notwithstanding it may be the most com-

mon one.   The election of one of the alternatives is, of
itself, a waiver of the other.   Bishop, in his work on Con-
tracts (sec. 779) says, that the doctrine of election applies
wherever there is a plurality of rights in the alternative,
and that, commonly, it is voluntary.   Again, (sec. 783,)
that beyond the knowledge of the fact necessary to a
valid election "there is believed to be no rule possible
more definite than that there must be some distinct lan-
guage, act or omission, which, illumined by the special
circumstances, plainly indicates the party's choice of the
one alternative and waiver of the other."   "There must
be language or conduct duly expressing or exemplifying
the intent." (Ibid. sec. 803.   See, also, 2 Herman on Estop-
pel, 1178, note ; *West* v. *Platt*, 127 Mass. 372 ; *Texas and St.
Louis Railway Co.* v. *Rust*, 19 Fed. Rep. 245.)   "When the
election is made it will be final, and cannot be reconsid-
ered, even where no injury has been done by the choice
or would result from setting it aside." (2 Herman on
Estoppel, 1173, 1196.)   "Wherever, by law or by contract,
a party has laid before him a variety of steps, the taking
of one of which excludes another or the rest, he must
choose between them.   After his choice is made, and by
words or by acts expressed in a manner suited to the par-
ticular case, he cannot reverse it.   He is said to have
elected the one step and waived the other."   Bishop on
Contracts, sec. 808.   See, also, 1 Wood on Fire Insurance,
327-332 ; *Wynkoop* v. *Niagara Fire Ins. Co.* 91 N. Y. 478 ;
*Morrell* v. *Irving Fire Ins. Co.* 33 id. 429; *Beals* v. *Home Ins. Co.*
36 id. 522.

Applying these principles to the case at bar, these
replications, averring an election by the company to pay
and a waiver of its right to rebuild, would, independently
of the arbitration, seem to be a sufficient reply to the
plea.   If the company refused to rebuild and decided to
pay, and so notified the insured, the only other party in-
terested, what more could be necessary, in law, to consti-
tute an election of the one alternative and the waiver of

the other?  Such election, when made, could not be re-
considered, nor the consequent waiver avoided, by the
company at its pleasure, even though the time limited in
the policy for such election had not expired.  The com-
pany was not bound to take all the time allowed to make
its decision, nor did the policy provide that it should
have more than the one choice; therefore, assuming the
replications to be true, the subsequent decision by the
company to rebuild, and the notice thereof to the plain-
tiff, as set up in the plea, were of no effect.

But it is contended by counsel for defendant, that all
conversations, negotiations, statements and promises be-
tween the parties, prior to or contemporaneous with the
execution of the written submission to arbitration, were
merged in that instrument, and that parol evidence is not
admissible to vary or contradict it, and therefore the
waiver by parol alleged in the replications could not be
proved.  The rule invoked is a familiar one, but its ap-
plication is not always free from difficulty.  Greenleaf,
in his work on Evidence, (vol. 1, sec. 284,) says, that the
rule does not apply in cases where the original contract
was verbal and entire, and a part, only, was reduced to
writing.  This court has also frequently so held.  (*Ludeke*
v. *Sutherland*, 87 Ill. 481; *Laflin* v. *Howe*, 112 id. 253.)  And
in *Lane* v. *Sharpe*, 3 Scam. 566, Mr. Justice CATON said:
"It is true, that matter collateral to the writing may be
proved by parol, but it must not change the terms of the
contract, or increase or diminish the liabilities of the
parties."  This qualification of the rule is aptly expressed
in Abbott's Trial Evidence, p. 295, thus: "Where it ap-
pears that the instrument was not intended to be a com-
plete and final statement of the whole transaction, and
the object of the evidence is simply to establish a sepa-
rate oral agreement on a matter as to which the instru-
ment is silent, and which is not contrary to its terms nor
to their legal effect," oral evidence is not excluded.  The
arbitration, by its terms, was limited to one thing, viz.,

the ascertainment of the actual cash value of the build-
ing destroyed, and it would be unreasonable to say that
verbal proof of another distinct and collateral thing could
not be made, because it preceded or was contemporane-
ous with the execution of the. writing. Nor would oral
proof of the election and waiver set up in the replications
in anywise tend to vary, contradict or enlarge the written
instrument. It would not, in any degree, affect the amount
of the loss or the manner of its ascertainment. Besides,
to apply the rule contended for, and exclude such oral
evidence, would violate the writing itself, which, on its
face, excludes from its operation every other question.

And this brings us to the last question raised by
plaintiff's counsel which it is considered important to
mention. It is insisted that the written submission, by
its express terms, excludes the conclusion that the com-
pany elected to pay the amount found by the arbitrators.
To this construction of the instrument we cannot assent.
True, it does, on its face, exclude the conclusion that the
company *thereby* elected to pay; but as it was "without
reference to any other question or matters of difference
within the terms and conditions of the insurance, and of
binding effect only so far as regards the actual cash value
of or damage to the property," it could not affect any
other matter whatever. It left all other questions and
matters arising out of the insurance contract just as they
would have been had not the written submission been
made. As it could not be construed as a waiver on the
part of the company of its right to rebuild, neither could
it be construed as denying that the company had in some
other manner waived such right. (*Soars* v. *Home Ins. Co.*
140 Mass. 343.) If it be true, as alleged in the replica-
tions, (and on the demurrer it must be taken as true,)
that the company, by its adjuster, on being requested to
rebuild the house destroyed by the fire, refused, uncondi-
tionally, to do so, and stated to the plaintiff that on the
amount being ascertained by arbitration it would pay it,

the company must be held to have elected to pay the loss and to have waived its right to rebuild.

For the error in sustaining the demurrer to replications five and six, the judgments of the Appellate and circuit courts are reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*